IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN EDWARD KUPLEN, )
)
     Petitioner, )
)
   v. )  1:14CV109
)
FRANK PERRY, )
)
     Respondent. )

## MEMORANDUM OPINION, ORDER AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, submitted a petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody, together with an application to proceed *in forma pauperis*.[1] Rule 4 of the Rules Governing Section 2254 Proceedings, states:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Further, a writ of habeas corpus may only issue if a petitioner demonstrates that he is in state custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a).

---

[1] Petitioner also filed a supporting brief and exhibits (Docket Entry 3) and a Motion (Docket Entry 4) seeking leave to have the brief and exhibits accepted even though they exceed 20 pages. The Court will grant the Motion seeking leave to file the supporting brief and will consider the brief and exhibits. Additionally, Petitioner filed a Motion for Judicial Notice and to be Heard (Docket Entry 5). He asks the Court to recognize certain facts that he claims are undisputed and to allow him to be heard. A number of the facts do not appear to be undisputed as Petitioner claims and, in any event, fact finding is not appropriate at this point in the case. Further, as explained below, no hearing is required. The Motion for Judicial Notice and to be Heard will be denied.

Here Petitioner sets out three potential claims based on a prison disciplinary conviction for taking a shower at a time when the showers were closed. According to Petitioner in his brief and supporting exhibits, on October 6, 2013, he soiled himself with a bowel movement caused by an upset stomach and needed to go the showers to clean himself. (Docket Entry 3, Ex. B-1.) The showers were closed at the time, but he alleges that he received permission from Correctional Officer Lowder to use the showers and that Lowder stated on other occasions that he did not care when inmates used the shower. (Id. at 3 and Ex. B-1.) Petitioner also claims that Lowder allows other inmates to use the showers when they are closed. (Id., Exs. B-1, H.)

On October 9, 2013, Sergeant Denton informed Petitioner that Lowder turned in a writeup to Unit Manager Copple stating that he observed Petitioner in the showers at a time when they were closed. (Id. at 3.) According to Petitioner, Copple viewed surveillance camera videotapes from October 6, 2013, and then ordered Lowder to submit the writeup as retaliation because she was angry with him for a grievance he filed against her. (Id. at 3, Exs. B-3, D.) Further, Denton allegedly told Petitioner that he should watch his back because Copple, Sergeant Murphy, and Officers Moore and Lowder were angry with him. (Id. at 3-4.)

In preparation for the disciplinary hearing, Petitioner submitted three written statements, requested written statements from fellow inmate Jeff Short, Copple, Lowder, Murphy, and Moore, and asked that they appear for live testimony. (Id., Ex. B1-3, I.) Additionally, Petitioner prepared a drawing depicting the viewing angles of the video

cameras and officers in the control booth in his housing area, as well as a chart labeled "Shower Observations" listing times and dates when Lowder and Moore allegedly knew inmates were using the showers while they were closed, but did nothing. (Id., Exs. G., H.) Petitioner asserts that the disciplinary hearing officer became "agitated" when he did not plead guilty and then "conducted the hearing in a perfunctory manner," by reading from the written statements, refusing to allow Petitioner to present his drawing and chart, failing to discuss an investigative report prepared by Denton, and excluding the videotape and live witnesses requested by Petitioner. (Id. at 4.)

The hearing officer's written decision states that he refused to allow videotape as evidence because a lack of any voice recording meant that it would not prove anything and that he rejected live witness testimony because he considered it "duplicative and cumulative." (Id., Ex. I.) He summarized the evidence as follows: (1) Lowder's written statement indicated that he wrote Petitioner up because he saw Petitioner in the showers at a time when they were closed and that he did this without any influence from Copple, who had no prior knowledge of the event and makes all inmates follow the posted shower schedule; (2) Copple wrote that she was not present on the day of the incident, that she knew nothing about it until she was asked to write a statement about it for the hearing, and that she denied retaliating against Kuplen in any way; (3) Murphy stated that she had no knowledge of the incident until Lowder submitted the writeup; (4) Moore wrote that "he has no knowledge of what Inmate Kuplen is talking about;" (5) Inmate Short supported Petitioner's claim that he soiled himself and went to shower off, agreed that Lowder allows inmates to shower at any time, and

reported that he heard Lowder say that he did not care when inmates used the showers, but that Copple reviewed the videotapes from the cameras and ordered officers to write inmates up; and (6) Petitioner claimed that he soiled himself and that he took a shower after receiving permission from Lowder, stated that Lowder and Moore had been allowing inmates to use the showers at any time, and maintained that Copple orders writeups based on her review of camera footage and that Lowder told him so.  (Docket No. 3, Ex. I.)  The hearing officer rejected Petitioner's defense, found him guilty, and imposed punishments of 30 days of segregated detention, the loss of 20 days of credit time, 30 hours of extra duty, a 60-day suspension of canteen and telephone privileges and two months of limited draw.  (Id.)  After an unsuccessful appeal to prison authorities, Petitioner filed this habeas petition.

Petitioner's first claim for relief is that several aspects of the disciplinary process violated his due process rights under the United States Constitution.  (Docket Entry 2, ¶ 12, Ground One; Docket Entry 3 at 1-2.)  "In a prison disciplinary hearing, an inmate has a right to advance written notice of his charges, a chance to present evidence, and a written statement from the factfinder explaining the evidence relied upon and the reasons for the ultimate decision."  Reeves v. Herron, No. 1:09CV287, 2010 WL 3945115, at *4 (M.D.N.C. Oct. 6, 2010) (unpublished) (citing Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985)), recommendation adopted, slip op., No. 1:09CV287 (M.D.N.C. Nov. 3, 2010); see also Wilkinson v. Austin, 545 U.S. 209, 229 (2005).  In addition, some evidence must support the factfinder's decision.  Reeves, 2010 WL 3945115, at *4.  Petitioner does not appear to contend that he failed to receive notice of his charges or a

written decision discussing the evidence. Further, his exhibits demonstrate conclusively that he received both. Instead, Petitioner focuses more on asserted defects in the presentation of evidence at the hearing and the hearing process itself.

According to Petitioner, the hearing officer denied his right to be heard, present evidence, and review video, but the record clearly shows that he was heard and did present evidence in the form of his own testimony and a number of witness statements. The fact that no live witnesses appeared, the hearing officer rejected Petitioner's chart and drawing, and the hearing officer refused to review video of the incident or discuss Denton's report does not show a violation of Petitioner's due process rights.

The hearing officer excluded the video because, due to the lack of any audio, it would not confirm that Petitioner asked Lowder's permission to use the shower. Petitioner does not allege that the video includes any audio recording. Petitioner also apparently wished to use the video in conjunction with his drawing to show that the camera could not capture whether or not he used the shower, but that point is irrelevant. Petitioner admitted from the start that he used the shower. The contested point concerned whether Lowder permitted him to use it and Petitioner has not shown that the video would address that question. Further, any evidence that the video did not show who used the shower area would severely undercut Petitioner's allegations that Copple ordered the writeup based on videotape. Finally, Petitioner faults the hearing officer for not discussing Denton's report, but does not show that the report would have helped his defense.

As for live witnesses, Petitioner makes no allegation that any live witness would have testified at the hearing contrary to their written statements. As a result, Petitioner has not established that the hearing officer's reliance on the written statements violated his due process rights. Finally, the exclusion of Petitioner's drawing and chart also did not violate his rights. As explained above, the drawing actually tended to undercut portions of his defense. Moreover, the chart of times that other inmates allegedly used the shower with Lowder on duty was merely cumulative of Petitioner's testimony and written statements that Lowder generally allowed other inmates to use the showers during closed hours.

Petitioner's remaining due process contentions attack the hearing process itself by challenging the hearing officer's honesty and impartiality, asserting that "external pressures" in the form of the chain of command, training, "political cronyism" and "other 'silent' rewards" created an unacceptable risk of unfairness, and alleging that staff manipulated the disciplinary process. (Docket Entry 3 at 1-2.) For the most part, these claims are entirely conclusory with absolutely no factual support alleged in the Petition. To the extent that Petitioner refers to Copple's alleged use of videotape to observe disciplinary infractions and order her subordinates to submit writeups, he unsuccessfully raised that claim at the disciplinary hearing. Petitioner cannot use the present preceding to relitigate or reargue the findings and conclusions from the hearing. "[I]n reviewing administrative findings under a federal habeas corpus or a section 1983 complaint, the federal courts cannot assume the task of retrying all prison disciplinary disputes," but must instead "consider whether the decision is supported by 'some facts' or 'any evidence at all.'" Haynes v. Quarterman, No. 4:07-CV-

0129-A, 2008 WL 859411, at *5 (N.D. Tex. Jan. 23, 2008) (unpublished) (citing and quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir.1981)). Here, the statements of the prison guards support the disciplinary decision, causing Petitioner's claims to fail.

Petitioner next contends that his punishments violated the Eighth Amendment of the United States Constitution. (Docket Entry 2, ¶ 12, Ground Two; Docket Entry 3 at 2.) This claim is frivolous. As the United States Court of Appeals for the Fourth Circuit stated, "[t]o succeed on an Eighth Amendment 'cruel and unusual punishment' claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir 1998) (citing cases). As set out above, Petitioner's own exhibits reveal that his punishment for the disciplinary offense consisted of 30 days of segregated detention, the loss of 20 days of credit time, 30 hours of extra duty, a 60-day suspension of canteen and telephone privileges, and two months of limited draw. He also states that the hearing officer neither activated nor voided similar suspended punishments for a prior disciplinary violation. (Docket Entry 3 at 2.) None of the punishments comes remotely close to depriving Petitioner of a basic human need. This claim should also be dismissed.

Finally, Petitioner asserts that prison officials' actions violated his right to equal protection under the law. (Docket Entry 2, ¶ 12, Ground Three; Docket Entry 3 at 2.) Much like some of his due process claims, this claim appears to represent an attempt to contest or reargue the outcome of the hearing. Petitioner presented the substance of his

argument that Lowder treated him differently from other inmates by writing him up for using the showers during restricted hours. The hearing officer rejected Petitioner's defense based on Lowder's denial. Petitioner cannot now use this habeas proceeding to challenge that conclusion given the evidentiary support.

Even considering the substance of Petitioner's equal protection allegations, he still fails to state a viable claim for relief. To state an equal protection claim generally, a petitioner must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648 (4th Cir. 2001). Typically, equal protection claims involve allegations that respondents "treated [a petitioner] differently because he is a member of a suspect class or because he exercised a fundamental right." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). Petitioner does not allege membership in a suspect class, but does maintain that Copple retaliated because he filed a grievance, which could implicate his right to free speech. However, Petitioner's allegations do not support such a claim because he claims that Copple maintained a practice of ordering writeups of multiple inmates based on her review of videotape. Petitioner makes no allegations that those other inmates also had filed grievances against Copple or that those not written up had refrained form filing grievances. A mere allegation that some inmates received administrative charges and others did not falls short of warranting an inference that Petitioner's inclusion in the former group

-8-

resulted from the grievance he filed or that he received different treatment from similarly situated inmates.

In some circumstances, a party can base an equal protection claim on a "class-of-one" theory of liability by showing that he was "'intentionally treated differently from others similarly situated and that there [was] no rational basis for the difference in treatment.'" Id. at 337-338 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). However, courts "approach[ ] class-of-one claims with caution," particularly where a decision "involves a great deal of discretion," because of the danger of turning all government decisions into constitutional causes of action. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011). In other words, a "class-of-one equal protection theory is a 'poor fit' where the challenged governmental action is the product of a broadly discretionary decision-making process." United States v. Moore, 543 F.3d 891, 900 (7th Cir. 2008). The decision by prison officials of whether or not to bring a prison disciplinary charge represents just such an action. Further, to the extent a class-of-one theory could apply here, Petitioner still does not successfully allege a viable claim. As already noted, even according to Petitioner's allegations, Copple ordered her subordinates to write up multiple inmates based on her videotape reviews. She did not single him out for disparate treatment. Petitioner states no claim for relief and the petition should be dismissed. See Renchenski, 622 F.3d at 338 (class-of-one claim failed where inmate did not allege that he was the only inmate labeled a sex offender without a charge or conviction of a sex offense); see also Kansas Penn Gaming, 656 F.3d at 1216-17 (courts must afford officials such as "police

officers, IRS agents, university administrators, zoning officials, and other, similar government actors" latitude in decision making or "government action would be paralyzed"); Moore, 543 F.3d at 899-900 (holding that decision of prosecutor to bring charges is not subject to no-rational-basis and class-of-one equal protection claims); Cunningham v. Drew, No. 9:12-CV-2596-RMG, 2013 WL 6834599, at *6 (D.S.C. Dec. 23, 2013) (unpublished) ("[W]hen equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner.").

In sum, it plainly appears from the Petition that Petitioner possesses no right to relief. Accordingly, *in forma pauperis* status will be granted for the sole purpose of entering this Order and Recommendation.

IT IS THEREFORE ORDERED that *in forma pauperis* status is granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Petitioner's Motion to Expand Page Limitation (Docket Entry 4) is granted and that his Motion for Judicial Notice and to be Heard (Docket Entry 5) is denied.

IT IS RECOMMENDED that Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2254 be denied and that judgment be entered dismissing the action.

This, the 24th day of April, 2014.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
